UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TIMOTHY BROWN,

        Plaintiff,

v.

DYNAMIC RECOVERY SOLUTIONS, LLC, et al.,

        Defendants.

Civil Action No. 20-6762 (MAS) (DEA)

**MEMORANDUM ORDER**

This matter comes before the Court upon Defendants Dynamic Recovery Solutions, LLC ("Dynamic") and LVNV Funding, LLC's ("LVNV") (collectively, "Defendants") Motion to Compel Arbitration or, Alternatively, to Dismiss Plaintiff Timothy Brown's ("Plaintiff") putative Class Action Complaint. (ECF No. 6.) Plaintiff opposed (ECF No. 10), and Defendants replied (ECF No. 15). Plaintiff also filed an unopposed Motion to File a Sur-Reply or, Alternatively, to Strike certain documents submitted with Defendants' reply (ECF No. 16), to which Defendants responded (ECF No. 17), and Plaintiff replied (ECF No. 18). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion is denied. In addition, Plaintiff's Motion to File a Sur-Reply is granted.

**I.**     **BACKGROUND**

This action arises out of alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. In February 2013, Plaintiff incurred a credit card debt with WebBank. (Compl. ¶ 27, ECF No. 1.) WebBank sold the debt, which was ultimately acquired by LVNV. (*See* Sexton Aff. ¶ 2, ECF No. 15-1; Compl. ¶ 34.) In October 2016, LVNV filed an action

against Plaintiff in the Superior Court of New Jersey, seeking to collect the debt. (Compl. ¶ 37.) In March 2017, LVNV obtained a default judgment against Plaintiff in the amount of $1,036.33, which included a statutory attorney fee of $33.91. (*Id.* ¶¶ 38–40; *see* Default J., Ex. A to Compl., ECF No. 1-1.) Sometime thereafter, LVNV referred the debt to Dynamic for collection. (Compl. ¶ 41.)

On April 24, 2020, Dynamic sent Plaintiff a debt collection letter ("Dynamic Letter"). (*Id.* ¶ 46; *see* Dynamic Letter, Ex. B to Compl., ECF No. 1-2.) Among other things, the Dynamic Letter identified LVNV as the current creditor and indicated that the total outstanding balance was $1,043.70, which included the statutory attorney fee of $33.91. (Compl. ¶¶ 56, 64.) The Dynamic Letter did not disclose the fact that interest was accruing on the debt. (*Id.* ¶¶ 62–63.)

The following day, on April 25, 2020, LVNV had a debt collection letter sent to Plaintiff through a different third party ("LVNV Letter"). (*Id.* ¶ 72; *see* LVNV Letter, Ex. C to Compl., ECF No. 1-3.) The LVNV Letter indicated that the balance owed was $1,044.25, which included the statutory attorney fee of $33.91. (Compl. ¶¶ 81–82.) The increase in the total balance owed was due to the interest that was accruing on the debt. (*Id.* ¶ 83.)

Plaintiff asserts that he, "as would any least sophisticated consumer, incorrectly believed from reading the Dynamic Letter that the amount of the [d]ebt was static and that his payment of the $1,043.70 amount listed in the Dynamic Letter would satisfy the [d]ebt irrespective of when the payment was remitted." (*Id.* ¶ 85.) In addition, Plaintiff asserts that "Dynamic and LVNV had no legal right to collect the [s]tatutory [a]ttorney [f]ee of $33.91 because" the fee "was not legally owed to LVNV" but rather "legally owed to, directly payable to, and the sole property of" LVNV's counsel in the state court action. (*Id.* ¶ 87.)

On June 2, 2020, Plaintiff filed the instant two-count putative class action against Defendants alleging violations of the FDCPA. (*See generally* Compl.) Count One alleges that Dynamic violated provisions of 15 U.S.C. §§ 1692e and 1692g by failing to disclose that interest was accruing on the debt and by seeking to collect the statutory attorney fee. (*Id.* ¶¶ 94–111.) Count Two alleges that LVNV violated provisions of 15 U.S.C. § 1692e by seeking to collect the statutory attorney fee. (*Id.* ¶¶ 112–17.) On October 1, 2020, Defendants moved to compel arbitration and to dismiss the Complaint.

## II. DISCUSSION

Defendants argue that Plaintiff's claims are subject to arbitration or, alternatively, barred by the *Rooker-Feldman* doctrine and fail to state a claim upon which relief may be granted. (Defs.' Moving Br. 1–2, ECF No. 6-1.) The Court addresses each argument in turn.

### A. Arbitration

Defendants assert that Plaintiff's Credit Account Agreement contained an arbitration provision that permitted either Plaintiff or WebBank to "choose to have any dispute arising out of or relating to [the] Agreement or [their] relationship resolved by binding arbitration." (*Id.* at 8 (quoting Agreement, Ex. A to Defs.' Moving Br., 6-4).) According to Defendants, LVNV acquired the right to enforce the arbitration provision when they purchased Plaintiff's account. (*Id.* at 2, 8.) Defendants contend, therefore, that "the Court should order the parties to arbitration because there is no genuine issue of fact as to whether the arbitration clause in the Agreement is valid and enforceable, or that Plaintiff's claims fall within the scope of that agreement." (*Id.* at 8.)

"It is well established that the Federal Arbitration Act (FAA) reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341

3

F.3d 256, 263 (3d Cir. 2003)). "The strong federal policy favoring arbitration, however, does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id.* (citing *Kirleis*, 560 F.3d at 160). When deciding a motion to compel arbitration, a court must first determine the applicable standard of review. The Third Circuit has instructed that:

> When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resol. LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (alteration in original) (internal quotation marks and citation omitted).

Here, whether Plaintiff's claims are subject to an enforceable arbitration provision is not apparent from the face of the Complaint or the supporting documents attached thereto. Although the Complaint and supporting documents reference Plaintiff's account and agreement with WebBank, none of those filings address the multiple sales of Plaintiff's account, including LVNV's acquisition. Rather, those sales are addressed for the first time in the exhibits attached to Defendants' Reply Brief. (*See* Sexton Aff. ¶ 2; Ownership Chain of Pl.'s Account *5–8[1] (reflecting

---

[1] Page numbers preceded by an asterisk refer to the page number on the ECF header.

4

the following transfers: WebBank to Bluestem Brands, Inc. ("Bluestem"); Bluestem, for itself and as agent for Santander Consumer USA ("Santander"), to Sherman Originator III LLC ("SOLLC III"); SOLLC III to Sherman Originator LLC ("SOLLC"); and SOLLC to LVNV), Ex. A to Defs.' Reply Br. ECF No. 15-1.) Consequently, whether Defendants acquired the right to compel arbitration is not readily determinable from Plaintiff's filings. Under similar circumstances, courts have denied motions to compel arbitration because "the issue of arbitrability could not be resolved without considering evidence extraneous to the pleadings." *See Kress v. Cavalry SPV I, LLC*, No. 20-3176, 2021 WL 1139875, at *2 (D.N.J. Mar. 24, 2021) (collecting cases).

Even if the Court considered Defendants' evidence, that evidence does not conclusively establish that Plaintiff is subject to arbitration. As Plaintiff notes, certain documents relating to the sale of Plaintiff's account indicate that they were subject to other documents that are not part of the record. (*See* Pl.'s Sur-Reply Br. 9–10, ECF No. 16-2.) For example, the bill of sale between WebBank and Bluestem provides that it is "subject to the terms and conditions of [their] Charged-Off Account Purchase Agreement." (Bill of Sale *5, ECF No. 15-1.) Defendants, however, did not submit the referenced Charged-Off Account Purchase Agreement, which may clarify whether the right to compel arbitration was in fact transferred as part of that sale. Similarly, the bill of sale between Bluestem/Santander and SOLLC III references a purchase agreement that is also not part of the record. (Bill of Sale *6, ECF No. 15-1.) In short, based on the present record, it is unclear whether Defendants ultimately acquired the right to compel arbitration.

On these facts, the Court denies Defendants' Motion to the extent it seeks to compel arbitration and will permit the parties to engage in limited discovery on the issue of arbitrability. *See Kress*, 2021 WL 1139875, at *3 (reaching same conclusion where the issue of arbitrability was not readily determinable from either parties' filings).

### B. *Rooker-Feldman*

Defendants also contend that even if Plaintiff's claims are not subject to arbitration, those claims are nonetheless barred by the *Rooker-Feldman* doctrine. (Defs.' Moving Br. 9–10).

The *Rooker-Feldman* doctrine constitutes a bar to suits brought by the losing party in state court that "seek[] what in substance would be appellate review of the state judgment in a [federal] district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The "party's recourse for an adverse decision in state court is an appeal to the appropriate state appellate court, and ultimately to the Supreme Court under § 1257, not a separate action in federal court." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000).

The *Rooker-Feldman* doctrine applies when: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Id.*

Here, the essential and closely related second and fourth elements are not satisfied. "The second element is viewed, primarily, as 'an inquiry into the source of the plaintiff's injury.'" *Farzan v. Bayview Loan Servicing, LLC*, No. 20-3330, 2021 WL 613843, at *6 (D.N.J. Feb. 17, 2021) (quoting *Great W. Mining*, 615 F.3d at 166). Defendants, in a conclusory manner, posit that "Plaintiff's injuries were caused by the [j]udgment, which was awarded to LVNV and provided

no instruction that LVNV could only seek to collect the [j]udgment total minus the attorney fee." (Defs.' Moving Br. 10.) The Complaint, however, does not challenge the state court judgment or the validity of the debt, but rather alleges that Defendants' collection practices violate the FDCPA by failing to disclose that interest was accruing on the debt and/or by seeking to collect the statutory attorney fee. (*See* Compl. ¶¶ 94–117). Thus, the source of Plaintiff's alleged injury is Defendants' conduct in relation to the collection of the state court judgment, not the state court judgment itself. For the same reasons, the fourth *Rooker-Feldman* element—whether Plaintiff "asks this Court 'to determine that the prior judgment was [in]correctly decided'"—is not met. *Farzan*, 2021 WL 613843, at *7 (citations omitted). "Indeed, a decision favorable to Plaintiff would not negate the fact that there is an outstanding judgment against [him]." *Latteri v. Mayer*, No. 17-13707, 2018 WL 2317531, at *4 (D.N.J. May 22, 2018).

*Latteri* is instructive. There, the plaintiff filed a complaint alleging that the defendant violated the FDCPA by attempting to collect on a state court judgment debt on behalf of an unlicensed entity. *Id.* at *1. The defendant moved to dismiss, arguing (among other things) that the *Rooker-Feldman* doctrine barred the plaintiff's claims because the plaintiff was complaining about losing in the state court action and sought to bar enforcement of the resulting judgment. *Id.* at *4. The district court disagreed. In finding *Rooker-Feldman* inapplicable, the court noted that the plaintiff was "not attacking the [s]tate [c]ourt judgment, but rather she [was] complaining about [the] *[d]efendant's conduct in relation to the collection of said judgment*." *Id.* Consequently, the district court concluded that the plaintiff was not seeking to have the state court judgment "review[ed] and/or negat[ed]"; instead, the "[p]laintiff merely s[ought] sanctions against [the] [d]efendant for violating the FDCPA[.]" *Id.*

7

Similarly, here, Plaintiff is not challenging the state court judgment or the validity of the debt. As in *Latteri*, the Court finds that "a decision favorable to Plaintiff would not negate the fact that there is an outstanding judgment against [him]. Rather, any such decision, if obtained, would merely require Defendant[s] herein to pay Plaintiff damages for [their] allegedly violative conduct."[2] *Id.* The Court, accordingly, denies Defendants' Motion to the extent it seeks to dismiss the Complaint based on the *Rooker-Feldman* doctrine.

### C. FDCPA Claims

Finally, Defendants contend that Plaintiff's claims fail to state a claim for relief. (Defs.' Moving Br. 10–13.) Having found, however, that the parties may engage in limited discovery on the issue of arbitration and that Plaintiff's claims are not barred by the *Rooker-Feldman* doctrine, the Court will reserve judgment on Defendants' Motion to dismiss for failure to state a claim pending resolution of the arbitrability issue. Accordingly,

**IT IS** on this 24th day of May, 2021 **ORDERED** that:

1. Defendants' Motion (ECF No. 6) is **DENIED** to the extent it seeks to compel arbitration and to dismiss the Complaint based on the *Rooker-Feldman* doctrine.

2. Plaintiff's unopposed Motion (ECF No. 16) is **GRANTED** to the extent it seeks to file a Sur-Reply.

3. The parties are directed to conduct limited discovery on the issue of arbitrability; the Court reserves judgment on Defendants' Motion to dismiss for failure to state a claim pending resolution of the arbitrability issue.

---

[2] Defendants' attempt to distinguish *Latteri* is unpersuasive. Defendants claim that "*Latteri* simply does not apply here because Plaintiff does not contend that LVNV was not properly licensed." (Defs.' Reply Br. 4, ECF No. 15.) But the fact that the defendant in *Latteri* was attempting to collect a debt on behalf of an unlicensed entity was merely the conduct that allegedly violated the FDCPA. The FDCPA's protections, however, are not limited to those circumstances as Defendants seem to suggest. Defendants also insist that "Plaintiff here *is* asking this Court to interpret how the funds of the [j]udgment were to be allocated. In doing so, this Court *would* need to review and negate the state court [j]udgment." (*Id.*) For the above-state reasons, however, the Court disagrees.

8

4. By June 7, 2021, the parties shall e-file joint correspondence to the Honorable Douglas E. Arpert, U.S.M.J., proposing a schedule for limited discovery.

5. Within seven days of the completion of limited discovery, the parties shall e-file joint correspondence updating the Court on the status of the matter and whether additional briefing is necessary.

*/s/ Michael A. Shipp*
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE